UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

J&J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

v.

GET AWAY LOUNGE, INC.
t/a GETAWAY LOUNGE
t/a GETAWAY,

    Defendant.

Civil Action No. TDC-13-3064

MEMORANDUM OPINION

Plaintiff J&J Sports Productions, Inc. ("J&J Sports") alleges that Defendant Get Away Lounge, Inc. ("Defendant") illegally exhibited a closed circuit broadcast of a boxing match to which J&J Sports owned the exclusive commercial distribution rights. J&J Sports brings claims for a violation of the Federal Communications Act (the "FCA"), 47 U.S.C. §§ 553, 605 (2012), and conversion. Presently pending is J&J Sports' Motion for Summary Judgment on the issues of liability and damages under the FCA.[1] The Motion is ripe for disposition, and no hearing is necessary to resolve the issues. See Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Motion is GRANTED.

BACKGROUND

J&J Sports distributes sports and entertainment programming through closed circuit television. It owned the exclusive commercial exhibition licensing rights to *Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight Program* (the "Program") broadcast

---

[1] J&J Sports does not request summary judgment on its conversion claim. Therefore, the Court does not address that claim.

nationwide on June 9, 2012. The night of the Program, J&J Sports hired an investigator who entered the Getaway Lounge ("Getaway"), a commercial establishment in Waldorf, Maryland. Defendant did not purchase a license to exhibit the Program at Getaway. Getaway generally used Direct TV satellite services to broadcast entertainment programs to patrons.

The investigator paid a $40 cover charge to enter Getaway. Inside, there were five televisions and a large projector screen. Four of the televisions were showing a National Basketball Association playoff game between the Boston Celtics and the Miami Heat. Another television showed a Keno lottery game, and there were Keno machines on the bar. The sound on the televisions was turned down. The Program was shown on a projector screen in front of a wall. A live band performed music in front of a dance floor and made "a lot of noise" throughout the Program. Moon Aff. at 1-2, ECF No. 1-2. The investigator counted between 100 and 200 people inside Getaway at various times throughout the evening. The investigator estimated that Getaway had a maximum capacity of about 250 people, but did not see a sign confirming the maximum capacity. The investigator did not see any advertisements for the Program.

On October 15, 2013, J&J Sports filed suit against Defendant under the FCA for exhibiting the Program without purchasing a commercial license. J&J Sports now moves for summary judgment.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one that might affect the outcome of the

suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248-49. "[A] summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## II.   The FCA

In its Complaint, J&J Sports asserted claims under Sections 553 and 605 of the FCA. Because Getaway used a satellite transmission to broadcast its sporting events, J&J Sports does not seek summary judgment under Section 553, which prohibits the unauthorized receipt or publication of cable transmissions. 47 U.S.C. § 553. J&J Sports seeks summary judgment only under Section 605, which provides, in relevant part:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

§ 605(a). This provision prohibits the unauthorized receipt or publication of satellite communications. *J & J Sports Prods., Inc. v. Mumford*, No. DKC 10-2967, 2012 WL 1409588, at *5 (D. Md. Apr. 20, 2012).

3

The FCA is a strict liability statute. *Compare* 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for the recovery of damages for each violation of the statute), *with* 47 U.S.C. § 605(e)(3)(C)(ii) (providing for enhanced damages when a violation is willful and for the purpose of commercial gain), *and* 47 U.S.C. § 605(e)(3)(C)(iii) (allowing for damages to be reduced to $250 if "the violator was not aware and had no reason to believe his acts constituted a violation of this section"). Thus, J&J Sports need only show that it had the exclusive distribution rights to the Program and that Defendant exhibited the Program without authorization. It has successfully made such a showing here.

J&J Sports had exclusive distribution rights. In an affidavit, Joseph M. Gagliardi, the President of J&J Sports, stated that J&J Sports retains the exclusive rights to license the Program to commercial customers for exhibition. Gagliardi Aff. ¶ 3, ECF No. 28-3. Included as an exhibit to the affidavit is a copy of the license agreement, between J&J Sports and the promoter of the Program, granting J&J Sports the exclusive license to exhibit the Program through closed circuit live television throughout the United States. Gagliardi Aff. Ex. 1, at 1, ECF No. 28-3.

J&J Sports has also established that Defendant exhibited the Program without authorization. It has submitted an affidavit from a private investigator who visited Getaway on the night of the boxing match and watched the Program on a large projector screen there. Moon Aff. at 1. In his affidavit, Gagliardi confirmed that Defendant did not have a commercial license to exhibit the Program. Gagliardi Aff. ¶¶ 3, 7.

Although Defendant agrees that it did not order the Program or enter into a licensing agreement with J&J Sports, *see* Def.'s Resp. to Pl.'s Interrog. Nos. 5(c), 5(d), 7, it denies that it exhibited the Program. In support of its contention, Defendant points the Court to its answers to Interrogatory No. 5, which provide:

> To Defendant's knowledge, no person or persons ordered or obtained Manny Pacquiao v. Timothy Bradley, WBO World Welterweight Championship Fight Program for Get Away Lounge, Inc. t/a Getaway Lounge t/a Getaway.
>
> To Defendant's knowledge, no method or methods or other means were used to allow Get Away Lounge, Inc. t/a Getaway Lounge t/a Getaway to receive Manny Pacquiao v. Timothy Bradley, WBO World Welterweight Championship Fight Program.

Def.'s Resp. to Pl.'s Interrog. No. 5(d), (e). These answers, however, only state that Defendant and its owners lacked any knowledge of any showing of the Program at Getaway. They do not refute, or create a genuine issue of material fact with, the investigator's sworn observation that the Program was shown at Getaway.

The other interrogatory responses submitted by Defendant also fail to create a factual dispute on whether Getaway showed the Program. In its answer to Interrogatory No. 8, Defendant states:

> 8. If it is your contention that you did not broadcast Manny Pacquiao v. Timothy Bradley, WBO World Welterweight Championship Fight Program listed in the Complaint, indicate the factual basis supporting such contention.
>
> Answer: Defendant generally denies the allegations of the alleged broadcast/exhibition of Manny Pacquiao v. Timothy Bradley, WBO World Welterweight Championship Fight Program.

Def.'s Resp. to Pl.'s Interrog. No. 8. This general denial is insufficient to establish a genuine issue of material fact. Significantly, it is not responsive to the question, which requests specific facts supporting the position that Defendant never broadcast the Program. The fact that Defendant responded to this interrogatory without offering any facts illustrates that it has failed to put forth any evidence to create a genuine dispute of material fact on whether Defendant showed the Program and thus violated the FCA. J&J Sports is therefore entitled to summary judgment.

## III. Damages

### A. Statutory Damages

J&J Sports further requests that this Court award damages under the FCA. The FCA gives plaintiffs the option to recover actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Here, J&J Sports requests statutory damages. Under the FCA, "the party aggrieved may recover an award of statutory damages for each violation of [the FCA] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). A just amount in this instance would include the fee that Defendant should have paid to show the Program, plus an additional amount to deter future violations. On this issue, J&J Sports offers an advertisement indicating a rate schedule based on "minimum seating." *See* Gagliardi Aff. Ex. 2, ECF No. 28-3. The term "minimum seating" is confusing. Although the investigator estimated, without any explanation, that the maximum capacity of Getaway was 250, and that at various times there were 100 to 200 people in the establishment, it is unclear how those figures relate to a calculation of "minimum seating," particularly when there is no evidence that seats were set up to watch the Program, and that there were numerous other reasons that patrons may have been present that evening other than the Program, including a live band, a dance floor, a broadcast of an NBA playoff game, and the Keno lottery game. Under these facts, the Court concludes that Defendant should have paid $4,200 to show the Program. *See* Gagliardi Aff. Ex. 2 (charging $4,200 for venues with "minimum seating" of 100 to 200). Under the circumstances of this case, increasing the damages amount to $8,000, almost doubling the fee, would sufficiently deter future conduct. J&J Sports is thus awarded $8,000 in statutory damages.

## B. Enhanced Damages

J&J Sports also argues that it is entitled to enhanced damages under the FCA. The FCA provides that, in any case that "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). Before awarding enhanced damages, the Court considers several factors: "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks." *J & J Sports. Prods., Inc. v. Quattrocche*, No. WMN-09-CV-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010) (citations omitted).

Upon consideration of these factors and the very limited evidence presented, the Court declines to award enhanced damages. Although, as discussed above, Defendant has not established a genuine issue of material fact on whether the Program was shown at Getaway, it has asserted that the owners were unaware that the Program was exhibited at the establishment. *See* Def.'s Resp. to Pl.'s Interrog. No. 5(e). So there is a disputed issue of fact regarding willfulness, which at this stage of the proceedings the Court must resolve in favor of Defendant.

Moreover, there is no evidence of repeat violations, and the investigator saw no advertising for the Program. The record does not establish whether Defendant had substantial monetary gains as a result of the Program. There is no evidence that Getaway charged a premium for food and drinks. Although the investigator paid a substantial cover charge, there were numerous other attractions at Getaway that evening, including a live band, a dance floor, a broadcast of an NBA playoff game, and the Keno lottery game. It is not clear whether Getaway

imposed a cover charge every night, and if so, in what amount. On the evidence presented, the Court cannot determine what portion of the proceeds from that evening was attributable to the Program as opposed to the other attractions. Thus, upon consideration of the relevant factors, the Court declines to award enhanced damages.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is GRANTED. J&J Sports is awarded $8,000 in statutory damages. A separate Order follows.

Date: July 30, 2015

THEODORE D. CHUANG
United States District Judge